UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ROBIN HAYS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:07-cv-328-SEB-DML |
| vs. | ) | |
| | ) | |
| CLARK PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment

[Docket No. 41], filed on May 22, 2008, pursuant to Rule 56 of the Federal Rules of Civil

Procedure and Local Rule 56.1.  Plaintiff, Robin Hays ("Hays"), brings this claim against

her former employer, Defendant Clark Products, Inc. ("Clark Products"), for its allegedly

discriminatory actions toward her based on her disability, in violation of the Americans

with Disabilities Act, 42, U.S.C. § 12101 *et seq*. ("ADA").  For the reasons detailed in

this entry, we <u>GRANT</u> Defendant's Motion for Summary Judgment.[1]

---

[1] In her briefing, Hays abandoned her age discrimination claim brought pursuant to the
Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.  Pl.'s Resp. at 1.
Thus, we <u>GRANT</u> Clark Products's Motion for Summary Judgment on this issue as well.

**Factual Background**

On November 3, 2003, Plaintiff Robin Hays began her employment as a receptionist for Defendant Clark Products in its Indianapolis distribution center.  When she interviewed for the receptionist position at Clark Products, she told the interviewer, Chris Orbaugh ("Orbaugh"), Division President of the Indianapolis plant, that she had previously been diagnosed with Multiple Sclerosis ("MS") and that, if hired, she would periodically need time off for doctors' appointments.  Orbaugh expressed no concern regarding Hays's disclosure and hired her with full knowledge of this diagnosis.  Robin Hays Deposition ("Hays Dep.") at 32-34.  Throughout her tenure at Clark Products, Hays periodically requested time off from work for medical appointments as she had said she would need to do, and Orbaugh always granted her requests.  Id. at 84; Chris Orbaugh Affidavit ("Orbaugh Aff.") ¶ 14.  Additionally, in the summer of 2005, Hays requested that her schedule be adjusted to accommodate her MS treatments and Orbaugh honored that request by reducing Hays's schedule to a 30-hour work week.  Id.; see also Exh. D (Attendance Records).

Clark Products's Indianapolis distribution center employs, on average, five office staff members who engage primarily in customer service duties.  Orbaugh Aff. ¶ 6.  During the time period when Hays was employed with Clark Products, between November 2003 and June 2006, Clark Products employed Linda Kile ("Kile"), Rebecca Cramer ("Cramer"), Barbara Pinnick ("Pinnick") as well as Hays in its Indianapolis office.  Id. ¶ 8.  As Division President, Orbaugh managed the Indianapolis distribution

2

center and Donneta Thompson ("Thompson"), the Office Manager, directly supervised the office staff, including Hays.  Id. ¶¶ 3, 9.


*Defendant's Employment Policies*

When she began working for Clark Products, Hays received and reviewed its equal employment, anti-harassment, and office policies.  Hays Dep. at 53; Orbaugh Aff. ¶ 10. Pursuant to Clark Products's equal employment and anti-harassment policies:

> All employment decisions [are] based on bona fide occupational qualifications . . . without regards to race, color, age, creed, gender, religious affiliation, national origin, ancestry, marital status, citizenship, disability unrelated to performance, service in the United States Armed Forces or any other category protected by federal, state, or local employment laws.

Exh. A (Company Policies).

Clark Products has also instituted employee conduct rules "to define ... the rights of [all employees]."  Id. at 13.  Under the employee conduct rules, Clark Products may discipline an employee for, among other things, inefficient and unsatisfactory performance, failure to exert effort and apply him or herself, or spending unnecessary time away from assigned duties.  Id.  Clark Products discourages "the use of company telephones for personal calls" but "recognizes that all employees, from time-to-time, have emergencies and other pressing matters that require the use of Company phones."  Id. at 43. Clark Products gives each employee a half or full hour meal period, "to use as [the employee] sees fit."  Id. at 31.  For meal periods, employees must "leave [their] regular

working area and if possible ... not have lunch at [their] desk[s]." Id.

*Plaintiff's Job Performance*

Hays received her first employee review after one year of employment, on November 18, 2004.  At that review, Orbaugh informed Hays that she talked on the phone too much and that she should try to keep such use to a minimum.  Hays Dep. at 40-41.  At her review, Orbaugh rated Hays's performance between "needing improvement" and "competent," and he set three goals for her: more customer service work, greater responsibility for branch work, and "pitch in" where needed.  Exh. B (Hays's Performance Review).  Prior to her review, Orbaugh had counseled Hays verbally on several occasions regarding "violating work rules, including eating lunch at her desk, excessive personal telephone calls, using her cell phone during work hours, and her basic diligence during work hours."  Orbaugh Aff. ¶ 11.

Although there were no other formal reviews of Hays, on January 16, 2006, Orbaugh met with the office staff to review policies and procedures.  At that meeting, Orbaugh instructed all of the staff to refrain from eating at their desks and to stop making personal telephone calls.  Hays Dep. at 60.  According to Orbaugh, "almost all staff members were eating at their desks, making numerous personal phone calls during work hours, and violating other office policies.  Ms. Hays was one of the worst offenders."  Orbaugh Aff. ¶16.  On January 24, 2006, Orbaugh met with Hays individually to repeat the policies discussed and reminded her "to limit personal phone calls, stop eating at her

4

desk, and stop using her cell phone during work hours." Orbaugh Aff. ¶ 18.  However,

Orbaugh never formally disciplined Hays for these or any other violations of Clark

Products's policies.  Hays Dep. at 40-41.


*Plaintiff's Allegations of Discrimination*

As a receptionist, Hays's duties consisted of answering the telephones, filing,

sorting mail, managing administrative matters (including invoices, reports, billing

documents and other paperwork), and helping customer service employees with telephone

or in-person sales calls, as needed.  Hays Dep. at 20, 37.  Hays testified in her deposition

that she could perform all of these tasks without any hindrance caused by her medical

condition.  Id. at 37.  According to Orbaugh, in 2006, Clark Products's business slowed

and, as a result, to keep busy, office staff members often assisted other employees in tasks

that fell outside of their job descriptions.  Orbaugh Aff. ¶ 6.  Thus, although it was not

one of her duties as a receptionist, Hays was also enlisted to assist with accounts payable

tasks, which required Hays to compare a list of items on one sheet of paper with a list of

items on another sheet to ensure the accuracy of the number of items recorded against

items received, to compare the costs of the items, and to resolve any discrepancies.  Hays

Dep. at 26.

Following the decline in business, employees at Clark Products also occasionally

left work early when there was not enough work to go around.  On March 30, 2006,

Hays's supervisor, Donneta Thompson, asked Hays and her co-worker, Rebecca Cramer,

if they wanted to leave early that day because business was slow.  Both Hays and Cramer

agreed and Hays voiced no complaint about being asked to leave work earlier than usual.

Id. at 99-100.

The next day, on March 31, 2006, Thompson verbally reprimanded Hays for poor

quality of work on an accounts payable assignment.  Hays Dep. at 101-02.  Hays

explained to Thompson that her MS affected her ability to concentrate on numbers, and

that she was unable to perform accounts payable tasks.  Id. at 20-22, 85.  When

Thompson asked Hays how MS affected her accounts payable work, Hays stated that

"doing accounts payable with [her] MS and figuring with the numbers, and trying to

answer the phones and all that, [she] just couldn't do it."  Id. at 20.  Hays alleges that

Thompson said in response, "When Chris [Orbaugh] gets back here, we will just have to

get somebody in here that can do their job if you can't do it."  Id.  Despite this alleged

comment, Hays concedes that, after Hays informed Thompson that she could not perform

accounts payable tasks, Thompson no longer assigned such duties to Hays.[2]  Id. at 85-86.

Later on March 31, 2006, because business remained slow, Thompson approached

Hays's co-workers, Linda Kile and Barbara Pinnick, to ask if they wanted to leave early.

Hays Dep. at 19.  According to Hays, after both Kile and Pinnick declined, Thompson

instructed Hays to go home.  Id. at 18.  Hays contends that, when she asked Thompson

---

[2] From time to time thereafter, other Clark Products's employees, including Diane
Fequay ("Fequay"), would ask Hays to do accounts payable work.  Id. at 86, 102; Fequay Aff. ¶
3.  However, Fequay was Hays's co-worker and not a supervisor or manager; she could not hire
or fire Hays if Hays refused.  Hays Dep. at 102.

the reason she (Hays) was being sent home despite having been asked to leave early the day before as well, Thompson told her that Pinnick had recently missed a significant amount of work because of various medical conditions and thus did not want to lose any more pay and that Kile's work was more valuable to the office because Kile was completing both customer service duties and the accounts payable work which Hays could not perform. Id. at 18-19. Hays responded that she had not been hired to do accounts payable work, that she had performed all the duties that she had been hired to do, and that she felt that Thompson was discriminating against her in sending her home for the day. Id. at 20-22; 54.

Orbaugh was out of town at the time, but upon his return in early April 2006, Hays went to his office to discuss the incident. Hays told Orbaugh that she was angry that she was the only employee that Thompson required to leave early on March 31, 2006, after she had been one of only two employees who were asked to leave early the day before. Orbaugh Aff. ¶ 21. Hays also informed Orbaugh about her dispute with Thompson regarding Hays's inability to perform accounts payable work and that she (Hays) did not appreciate having Thompson reprimand her in front of her co-workers. According to Hays, although she did not say what the basis of her discrimination allegation was, she told Orbaugh that she had accused Thompson of being discriminatory. Hays Dep. at 57. A few days later, Orbaugh met with both Hays and Thompson to discuss the incident. At that meeting, Thompson expressed frustration about Hays's continued lack of productivity and violation of conduct policies. Hays admitted to violating various work

policies, but reiterated her concerns about being the only employee sent home on March 31, 2006.  Orbaugh Aff. ¶¶ 22-25; Hays Dep. at 55-56.  There was no discussion of discrimination at the meeting.  Hays Dep. at 57.

*Plaintiff's Termination*

In May 2006, Donald Hindman ("Hindman"), the President and Chief Executive Officer of Clark National, Inc., met telephonically with all the division presidents, including Orbaugh, to discuss the need to reduce payroll costs and implement a company-wide reduction in force.  Several days later, Hindman and Orbaugh spoke specifically about positions that could be eliminated at the Indianapolis Division in order to achieve the company's financial goals.  Orbaugh determined that eliminating the full-time receptionist position was the most reasonable step because other members of the office staff could split the receptionist duties among themselves without a significant disruption.  Orbaugh Aff. ¶¶ 26-27.

Orbaugh informed Thompson of his decision to terminate the full-time receptionist position and asked Thompson to attend the meeting at which he would inform Hays that her position was being eliminated.  Accordingly, on June 19, 2006, Orbaugh and Thompson met with Hays, and Orbaugh informed her that, because of the decision to eliminate the full-time receptionist position, her employment with Clark Products was being terminated.  Id. ¶ 28; Hays Dep. at 64.  Orbaugh prepared a letter of reference for Hays to use in finding other employment.  Orbaugh Aff. ¶ 28; Exh. E (Letter of

8

Recommendation).

*Post-Termination Events*

After Hays's termination, a number of other personnel adjustments were made in the Indianapolis distribution center.  According to Hays and Cramer, Pinnick, a customer service employee, was moved to Hays's desk and took over Hays's duties in answering the telephones.  Cramer Dep. ¶ 7; Hays Dep. at 97-98, 112-113.  However, Pinnick retained her classification as a customer service representative and continued to be paid at the rate of a customer service employee.  Orbaugh Supp. Aff. ¶ 7; see Exh. B (Pay Scale).

On June 19, 2006, Mary Barton ("Barton") was hired to replace Kile as a customer service representative because Kile had been transferred from customer service to accounts payable.  Orbaugh Supp. Aff. ¶ 8; see Exh. M.  In early August 2006, Barton was transferred from customer service to the purchasing department to replace Diane Fequay, a purchasing employee who had left the company.  Orbaugh Supp. Aff. ¶ 9; see Exh. C (Barton's Payroll Change).  On October 30, 2006, Marilyn Weiss ("Weiss") was hired as a customer service representative to replace Barton.  Orbaugh Supp. Aff. ¶ 12; Exh. N.  According to Cramer, Heidi Kenworthy ("Kenworthy") was later hired as an additional customer service employee.  Cramer Aff. ¶ 9.

*The Instant Litigation*

On July 12, 2006, Hays filed a charge of discrimination with the Equal

9

Employment Opportunity Commission ("EEOC").  On March 9, 2007, Hays filed her complaint, alleging that, in violation of the ADA, Clark Products had failed to accommodate her disability and that her termination was both retaliatory and discriminatory based on her disability.

## Legal Analysis

### I.    Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of

10

the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325; Doe v. R.R. Donnelley & Sons, Co., 42 F.3d 439, 443 (7th Cir. 1994).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). The record and all reasonable inferences that may be drawn from it are viewed in a light most favorable to the party opposing the motion. Anderson, 477 U.S. at 247-52. Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

The summary judgment standard is applied rigorously in employment

discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available.  Seener v. Northcentral Technical Coll., 113 F.3d 750, 757 (7th Cir. 1997); Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 354 (7th Cir. 1996).  To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination.  However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts.  Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997).

## II.    Discriminatory Termination

Hays contends that she was terminated because of her disability in violation of the ADA.  Under the ADA, employment discrimination is prohibited "against a qualified individual with a disability because of the disability."  42 U.S.C. § 12112(a); Furnish v. SVI Sys., Inc., 270 F.3d 445, 448 (7th Cir. 2001).  It is the plaintiff's burden to prove that she is a "qualified individual" under the ADA, to wit, that she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires."  Weiler v. Household Fin. Corp, 101 F.3d 519, 524 (7th Cir. 1996) (quoting 42 U.S.C. § 12111(8)).  Therefore, before we consider Hays's claim under the ADA for discriminatory termination, we must first assess whether Hays was disabled within the meaning of the ADA.

12

Under the ADA, an individual has a "disability" if: (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such an impairment; or (3) her employer regards her as having such an impairment.  42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).[3]  Here, Hays argues only that she has an impairment that substantially limits one or more of her major life activities; she does not contend that she has a record of such an impairment or that she is regarded as having such an impairment.  See Pl.'s Resp. at 8.  Thus, our analysis shall follow her lead, and we examine only the first of these definitions of disability.

The parties do not dispute that Hays's MS constitutes a "physical impairment," as defined under the ADA.[4]  However, it is well established that a medical condition standing alone is not sufficient to establish disability as defined by the ADA.  Burnett v. LFW Inc., 472 F.3d 471, 483 (7th Cir. 2006).  For a physical impairment to rise to the

---

[3] On September 25, 2008, Congress amended the ADA's definition of disability.  See § 3 of the ADA Amendments Act of 2008 (September 25, 2008).  However, Section 8 of this statute provides that the legislation's effective date is January 1, 2009.  Therefore, the new definition does not apply here because we "use the laws and interpretations that were in force when the complained-of acts occurred."  Kiesewetter v. Caterpillar, Inc., 2008 WL 4523595, at *1 (7th Cir. October 9, 2008) (citing Landgraf v. USI Film Products, 511 U.S. 244 (1994)).

[4] The EEOC regulations define a physical impairment as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine."  29 C.F.R. § 1630.2(h)(1).  Hays has been diagnosed with MS, which is defined as: "A chronic autoimmune disease of the central nervous system in which gradual destruction of myelin occurs in patches throughout the brain or spinal cord or both, interfering with the nerve pathways and causing muscular weakness, loss of coordination, and speech and visual disturbances." The American Heritage Dictionary of the English Language, Fourth Edition, Houghton Mifflin Company, 2004.

level of ADA protection, it must substantially limit one of the individual's major life activities, which the Supreme Court has defined as activities that "are of central importance to daily life."  Cassimy v. Board of Educ. of Rockford Public Schools, Dist. No. 205, 461 F.3d 932, 936 (7th Cir. 2006) (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002)).  Major life activities include, but are not limited to, "caring for oneself, performing manual tasks, walking, seeing, being, breathing, learning and working."  29 C.F.R. § 1630.2(i).  An individual is substantially limited within the meaning of the ADA if she is: "(1) unable to perform a major life activity that the average person can; or (2) *significantly restricted* as to the condition, manner or duration under which he can perform a major life activity as compared to the average person."  Williams v. Excel Foundry & Machine, Inc., 489 F.3d 309, 311 (7th Cir. 2007) (citing 29 C.F.R. § 1630.2(j)(1); Kampmier v. Emeritus Corp., 472 F.3d 930, 937 (7th Cir. 2007)).

Initially, it is not entirely clear which major life activity Hays is contending is affected by her MS.  For the purposes of this litigation,[5] Hays describes the extent of the impact of MS on her day-to-day functioning in the following manner:

> [W]hen I'm asked to do too many things at one time, I will leave something out, especially numbers.  If somebody says the number, I might be thinking of the next number instead of what they just said. . . . [I]f your [sic] sitting there doing numbers or adding and subtracting and the phone is ringing, yeah, or trying to have a conversation with somebody on the phone while

_____

[5] In her deposition, Hays testified briefly regarding some difficulties that she encounters with walking as a result of her MS.  However, in her briefing on this motion, she did not argue that "walking" is the major life activity that she contends is substantially limited by her MS, nor, for that matter, did she make any mention at all of her difficulties associated with walking.  Thus, we consider any such argument waived.

> you're doing this, it's difficult to do number tasking at the same time I'm
> doing something else.

Hays Dep. at 13-14.  According to Hays, MS impairs her ability to perform the cognitive

and multi-tasking skills described above, which she appears to contend are major life

activities.  Pl.'s Resp. at 9.  There is no support in the case law for the proposition that

"multi-tasking" itself constitutes a major life activity.  Alternatively, even if we assume

that Hays's alleged inability to multi-task while dealing with numbers falls within the

scope of "thinking" and thus qualifies as a major life activity, Hays is nevertheless unable

to demonstrate that she is "substantially limited" in that major life activity as defined by

the ADA.  She does not suggest that her cognitive thinking skills are affected in any

capacity beyond merely rendering her unable to perform certain limited tasks dealing with

numbers (such as adding, subtracting, and comparing figures) while simultaneously

completing her receptionist duties (such as answering the telephone).  There is no

evidence in the record to support the conclusion that, unlike Hays, the average individual

has such an ability.  Moreover, even if there were such evidence, we could not conclude

that such a minor impairment in cognitive thinking skills represents a significant

restriction as compared to the average individual, so as to be considered substantially

limited under the ADA.  At best, Hays has shown only that her MS has caused a minor

impairment in the performance of a major life activity, which does not establish a

disability under the ADA.

It is unclear whether Hays is also claiming a substantial limitation in her ability to

15

work.  She describes her cognitive and multi-tasking impairments with reference to the

difficulties she encountered while completing accounts payable tasks at Clark Products,

which would appear to implicate the major life activity of "working."  Pl.'s Resp. at 10.

To the extent that "working" is the major life activity under consideration, Hays must

demonstrate that she had an inability to work in "a broad range of jobs, rather than a

specific job."  Kiesewetter v. Caterpillar Inc., 2008 WL 4523595, at *1 (7th Cir. October

9, 2008) (quoting Toyota Motor Mfg., 534 U.S. at 200); see also 29 C.F.R. §

1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a

substantial limitation in the major life activity of working.").  The evidence here does not

support such a conclusion.  According to Hays, herself, the only tasks that she was unable

to perform were the accounts payable duties that she was asked to complete.  She

performed all of the other described duties of the receptionist position perfectly well.

Thus, while Hays contends that her MS prevents her from completing accounts payable

tasks for Clark Products, she has not attempted to demonstrate that it prevents her from

working on any broader scope.  For the foregoing reasons, Hays is unable to show that

she is protected by the ADA because she has not met her burden of demonstrating that

she is "disabled" as defined by the statute.  Accordingly, we GRANT Clark Products's

Motion for Summary Judgment on Hays's discriminatory termination claim.


**III.    Failure to Accommodate**

Hays also claims that Clark Products failed to accommodate her disability in

16

violation of the ADA.  To prevail on a claim of failure to accommodate, an employee must show that: "(1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability."  Mobley v. Allstate Ins. Co., 531 F.3d 539, 545 (7th Cir. 2008) (quoting EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005)).  As discussed above, Hays has failed to demonstrate that she is a qualified individual with a disability.  Accordingly, we GRANT Clark Products's Motion for Summary Judgment on Hays's failure to accommodate claim.

## IV.   Retaliation

Hays contends that Clark Products retaliated against her when Orbaugh terminated her employment approximately eleven weeks after she informed Thompson that she could not perform accounts payable tasks because of her MS.  Hays may prove her retaliation claim either directly or indirectly.  See Treadwell v. Illinois Sec'y of State, 455 F.3d 778, 781 (7th Cir. 2006).  Hays relies solely on the direct method to establish her retaliation claim, so again we limit our analysis to that allegation.  In order to establish a case of retaliation under the direct method of proof, Hays must show evidence of: "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two."  Mobley, 531 F.3d at 549 (quoting Squibb v. Memorial Medical Center, 497 F.3d 775, 786 (7th Cir. 2007)).

Hays contends that she engaged in statutorily protected activity on March 31,

17

2006, when she complained to Thompson that she (Thompson) was being discriminatory by sending Hays home solely because she could not perform accounts payable tasks.  In retaliation cases, "it is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry."  Rucker v. Higher Educ. Aids Bd., 669 F.2d 1179, 1182 (7th Cir. 1982).  Thus, in order to have engaged in statutorily protected activity, Hays did not have to be correct in believing that Thompson's act of sending her home because Hays could not perform accounts payable work actually violated the ADA, as long as Hays acted "with a reasonable and sincere belief" that she was opposing unlawful discrimination. Talanda v. KFC Nat. Management Co., 140 F.3d 1090, 1096 (7th Cir. 1998) (quoting Roth v. Lutheran General Hosp., 57 F.3d 1446, 1459 (7th Cir. 1995)).  However, in order to show that she engaged in statutorily protected activity, Hays must demonstrate not only that she sincerely believed that she was disabled as defined under the ADA, but also that her belief was reasonable.

Assuming that Hays sincerely believed she was opposing unlawful disability discrimination when she complained to Thompson, this belief was unreasonable.  As discussed above, in order for discrimination on the basis of a disability to be actionable, the plaintiff must first be disabled as defined by the ADA.  An impairment only constitutes a disability under the ADA, if it "substantially limits one or more of the major life activities."  42 U.S.C. § 12102(2)(A).  Even if the impairment affects a major life activity, "it will be considered a disability under the ADA 'only if the resulting limitation is significant.'"  Talanda, 140 F.3d at 1097 (quoting Davidson v. Midelfort Clinic, Ltd.,

18

133 F.3d 499, 506 (7th Cir. 1998)).

In light of the foregoing, it was not reasonable for Hays to have believed that her inability due to her MS to perform accounts payable tasks simultaneously with her receptionist duties constituted a disability as defined by the ADA.  As explained above, Hays contends that her difficulties associated with accounts payable represent a limitation on the major life activities of "multi-tasking and cognitive skills."  Because the impairment of those skills manifests itself only in Hays's ability to perform accounts payable tasks, it seems to implicate more logically the major life activity of "working." However, regardless of which major life activity Hays believed was affected by her MS, in light of clearly established precedent, we deem it unreasonable for Hays to assume that her impairment constituted a disability as defined by the ADA.

Initially, as discussed above, there is no support for the proposition that "multi-tasking," on its own, constitutes a major life activity.  However, even assuming as we did previously in this discussion that difficulty in multi-tasking, specifically when dealing with numbers, is an aspect of the major life activity of "thinking," it strains credulity beyond reason to maintain that such a narrow limitation in a single aspect of Hays's life, performing accounts payable tasks, constitutes a substantial limitation of "thinking." With regard to the major life activity of "working," the EEOC regulations explicitly state that the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(i).  Hays, herself, insists that she was hired to be a receptionist and that she was capable of

19

performing all of the required duties of that position, and that her only limitation was that she could not, in addition, perform accounts payable tasks.  Thus, Hays could not have reasonably believed that her inability to perform the duties required of a single job position, an accounts payable clerk, was a substantial limitation in the major life activity of working.  Accordingly, we GRANT Clark Products's Motion for Summary Judgment on Hays's retaliation claim.

## V.        Conclusion

For the foregoing reasons, we GRANT Clark Products's Motion for Summary Judgment in its entirety.  Final judgment shall enter accordingly.

IT IS SO ORDERED.


Date: _____                     _Sarah Evans Barker_
                                                  SARAH EVANS BARKER, JUDGE
        12/18/2008                                United States District Court
                                                  Southern District of Indiana

Copies to:

John H. Haskin
HASKIN LAUTER & LARUE
jhaskin@hlllaw.com

Paul Anthony Logan
HASKIN LAUTER & LARUE
plogan@hlllaw.com

Michael A. Moffatt
LITTLER MENDELSON PC
mmoffatt@littler.com